Are we ready on the last case on the calendar? All right. Council, you have 15 minutes aside, and whenever you're ready, I think your friends are still getting seated there, so if you wanted to wait a little bit. Does that sound all right? All right. When you're ready, Council. Thank you, Your Honor. May it please the Court, my name is Adam Berger. If you could try to move, perhaps move the mics a little closer to you, if that's possible. Great. Thank you. My name is Adam Berger, and I represent the plaintiff, Dena Griffith, in this appeal. I'd like to reserve five minutes of my time for rebuttal. The question on this appeal is whether the District Court erred in dismissing plaintiff's complaint without any opportunity for discovery, where plaintiff plausibly alleged violations of the Washington Consumer Protection Act, or CPA, breach of contract, and breach of the duty of good faith and fair dealing. Just a very brief actual background, as alleged in the complaint, in early to mid-2021, plaintiff Griffith saw online ads promising free delivery of Whole Foods groceries with an Amazon Prime membership. Whole Foods was acquired a couple of years prior by Amazon, was an Amazon subsidiary. Based on this promise, plaintiff Griffith was one of many consumers who were drawn to this deal, and in June 2021, she signed up and paid for an annual Prime membership. Did she agree to the shrink rep? There's no indication in the record that she ever read the terms and conditions or the conditions of use. And did she check the box that said, I agree to the terms and conditions? I'm not certain. There's nothing in the record about exactly how the terms and conditions are agreed to. But, you know, beyond the terms and conditions, the first claim under the Washington Consumer Protection Act here is a deceptive advertising claim that it's basically a classic bait and switch claim, that they advertised free delivery from Whole Foods. At the time she initially signed up, that was true, was it not? Well, we don't know when they stopped. At the time she saw the ads, it was true. And in June 2021, it was true. And the terms and conditions that Judge Hawkins was referring to say, from time to time, that Amazon may choose, in its sole discretion, to add or remove Prime membership benefits. And presumably she would not have been allowed to sign up without checking the box on terms and conditions, plus that sort of common knowledge, isn't it, that benefits come and go with time? Well, I don't think it's common knowledge when you sign up for an annual contract based on specific promises about... And based on this that says, we get to decide whether we keep, delete, change, add benefits for your Prime membership. I think there are several levels of response that I would like to give to that, that track the four claims in the case. The deceptive CPA claim, the unfair CPA claim, the breach of contract claim, and the good faith and fair dealing claim. First of all, on the deceptive advertising claim, the terms and conditions, there is nothing in the ad that indicates to people that this is a conditional or qualified service. And again, I don't think when consumers see an ad that says, with Amazon Prime membership you will get free Whole Foods grocery delivery, think this is something that could be yanked at any time. Unless they read the terms and conditions. And I would direct the Court, or ask the Court to read the Keithley v. Intellius case on that, which sort of goes specifically to this point and has a passage that was not quoted in our brief, although the case is cited in our brief, that talks about the fact that the FTC has recognized, and the Courts have recognized, consumers often don't read these things unless there is an indication to them that they should read. Counsel, I'm right that a consumer paying attention to their billings, the most they would actually be out of pocket is $10? Yes, if they recognize. I mean, if they saw they'd been billed, once they saw that they were billed, they would know it's not free anymore. That is correct. Even if they hadn't seen anything else. That is correct. But that disclosure comes too late when they've already signed up and paid. Well, let me just clarify. When they go ahead and order the groceries, it's clearly shown delivery fee. It's there. Wouldn't that, even before the time of the billing, have told someone, ah, they're going to charge me here? I assume what Judge Bennett was asking about in terms of the billing was during that process. And the complaint does allege that the disclosure of the delivery fee, even during the ordering process, is surreptitious because of the placement size, font. But even with that, again, the most you're out is $10 before you know that it's not free anymore. Assuming you recognize it during that transaction. Yes, Your Honor. But by then, you have already paid the $139, in this case, for the annual membership, and there's no refund or recourse, practical recourse, for a consumer to get that money back at that point, even though they have lost a service that was specifically promoted and promised. Amazon says, well, look, you can cancel the membership at any time. But canceling the membership without getting any refund, which is what the terms and conditions provide, is no real recourse. Then you've given up... Does it matter here? If I misunderstand the facts, please correct me. But does it matter here, as I understand it, that your client re-upped the prime membership, even after learning that the $9.95 benefit for Whole Foods deliveries was no longer in force? Respectfully, she failed to cancel it in time before it automatically renewed, as opposed to deliberately re-upping. But yes, she failed to cancel it at the very next annual opportunity, before the second renewal, she did cancel it. And the complaint specifically says she canceled it because of the termination of this service, and that she would rejoin if this free delivery were restored. So what we don't know about the ads is when Amazon, thinking about the prior consumer protection places that have been here today, when Amazon stopped using the ads, and when it decided or started contemplating termination of this service. We do know it was just a mere few months after she saw the ads and signed up, Ms. Griffith. And we know, or can reasonably assume, that a huge corporation like Amazon doesn't make these decisions overnight. It has to go through layers of consideration and decision making before deciding to terminate this service. And that's where discovery, to determine whether the ads were truthful when made, or whether they had the capacity to mislead a reasonable consumer when made, would be in order. Because even if on the day that Ms. Griffith signed up, or the day she saw the ad, they were still offering the free delivery. Counsel, again, I may be misunderstanding, but I thought that your client actually obtained more than one free grocery delivery. So why is it in question whether the ad was truthful when she signed up, if she actually received the precise benefit she's claiming she was supposed to receive? Because if they were already considering at the time, or had decided at the time, to terminate this at some point in the next few months, that would have the capacity to mislead a reasonable consumer into believing they were signing up for an annual membership that would continue this benefit when Amazon knew it was going to be terminating the benefit. Forever, or just one year? Just one year. And furthermore, there's an unfairness claim under the CPA, which is basically inducing consumers to sign up for an annual membership with specific promise of a valuable service, and then unilaterally terminating that service without providing any refund or recourse. It's plausible to allege that is unfair under the broad standards described in Greenberg v. Amazon, where the court said, we liberally construe and flexibly construe the definition of unfair under the CPA. Plaintiff needs only to show that the defendant's conduct is in violation of public interest, and specifically rejects the notion that the substantial interest test under the FTCA is the only, substantial injury test rather, is the only means of satisfying the unfair prong. I'd like to turn briefly, just briefly, on the breach of contract claim. There's no dispute here, for purposes of this appeal, that the contract was not an integrated contract. Therefore, terms could be added to the terms and conditions of use, and in fact, the conditions of use specifically say that Amazon makes no representations as to the operation of the services, unless otherwise specified in writing. And the claim is that these specific ads are something specified in writing about a service that would be provided, and because of that, adding that term doesn't contradict any other term in the contract. And then just turning briefly to the good faith and fair dealing claim, which I think is the final response to this notion, to this point that Amazon, under the terms and conditions, reserves discretion to terminate or change services at any time. First of all, we're not talking about just changing a service here. If you accept the integration argument, they're breaching the contract. But even beyond that, what Rector from the Washington Supreme Court says is the duty of good faith and fair dealing arises when the contract gives one party discretionary authority. That's exactly the language, discretion, that's used in the terms and conditions. Whether Amazon is exercising that discretion reasonably is a question of fact that can't be decided as a matter of law. Whether it abused its discretion, whether it evaded the spirit of the bargain with consumers, or whether it was willfully rendering imperfect performance by terminating this service, those are all plausible allegations of violations of the good faith and fair dealing duty that's given rise to by the discretion that Amazon retained under the contract to vary benefits. If there are no further questions, I'd like to reserve my remaining time. Brian Buckley with Fenwick & West on behalf of the defendant and appellee, Amazon. I'd like to start by addressing one very specific point that Judge Hawkins brought up, and that's about the contract. There is no dispute here that the plaintiff agreed to the prime terms. She doesn't allege that she didn't, she doesn't remember reading them, and she's suing to enforce them. So there's never been any dispute that the prime terms are the operative contract. There's potentially some dispute about what is integrated or not into those terms, but the contract is the prime terms. I want to address a number of things that Mr. Berger brought up, but with your permission, unless there's something specific you'd like me to hit first, I'd like to address a couple of threshold issues that I think permeate all of the plaintiff's claims and arguments. In her complaint, in her briefing, you got a flavor of it in Mr. Berger's argument. All of it is sort of suffused with this outrage that somehow Amazon is acting unfairly and it's engaged in bait-and-switch advertising and it's cheating its customers. I urge you to reject that framing. The prime membership is the best deal around. There's literally nothing like it. For $139 a year, not a month, a year, you get all of the enhanced shipping benefits, millions of items that can be at your house in two hours, millions more that can be in your house the next day, all for free. You get complete access to prime video, all the movies, all the TV shows, all the original content, sports, and more. You get access to Amazon Music, which is effectively an infinite catalog of music. I've never found a single song that I want to listen to that's not on Amazon Music. You get free Kindle books and Audible books. You get exclusive deals and discounts on things, including on prescriptions. You get a free membership to Grubhub, which by itself is a total value of $120, almost the same value as the prime fee. I do think one of your friend's arguments is that under Washington law, where a party to a contract reserves a discretionary right to do certain acts, that there is an obligation to do that in good faith. And it sounds like his argument is that if you unilaterally cut a benefit, that you have to do it in good faith. And I don't think that that automatically is an issue of fact if you're doing it under this plenary discretionary power that you've reserved to yourself. It sounds like, I mean, you may have other responses, but it sounds like part of your response is, well, it can be an issue of law because we've got A through Y, which are so much more valuable than Z. So, your Honor, I'm glad that you went right there because Mr. Berger is flatly wrong on the law. So, first of all, there is no implied duty of good faith. No duty of good faith attaches when all a party is doing is exercising its contractual right. And the best articulation of that is the Supreme Court's articulation in Bagehot, the state Supreme Court, where they said, there cannot be a breach of the duty of good faith when a party simply stands by its contractual right. When a party simply stands on its rights to require performance of a contract according to its terms. That is all Amazon did, even if you accept that Free Whole Foods delivery was a prime benefit at the time that plaintiff signed up, the only one she cared about. All Amazon did was exercise its express contractual right, which appears twice in the prime terms, and removed that benefit. What Bagehot says is, there is no implied duty in that scenario. So, they could remove every benefit, say, except one? No, they could not. So, how do you draw the line if your friend is wrong? So, your Honor, I submit that that sort of counterfactual parade of horribles is not rhetorically very useful because we are nowhere near that scenario here. And in oral argument before the district court, Mr. Berger candidly admitted that. He said to Judge Lynn, this is not a case where Amazon has removed too many prime benefits. No, no, I understand that, but you just said, if I'm hearing you correctly, that you can't have an unfair practices claim if all you're doing is doing what the contract permits you to do. And as I read the contract, it says that, from time to time, we may choose in our sole discretion to add or remove prime membership benefits, which would, by its language, include everything. No, it doesn't say remove all prime benefits. So, if this were a case where we had taken away everything, or 90% of it, and all that was left was free photo storage, we would have a very different case. That is not what has happened. So, if taking what you say is true, how do we divide the line between where taking away is too much, such that it's not amenable to summary judgment, and where taking away is too much, such that it's not amenable to summary judgment. But you've taken away so little that it is amenable to summary judgment. How would we or the district court draw the line there? Because you said taking away too much can be a violation, taking away here isn't. What's the line? So, Your Honor, we're conflating a few things. So, this idea that you could take away everything, in theory, goes to whether the contract is illusory. And what the law says is it's not illusory unless the party has literally no obligation to do anything. And that isn't our case. Amazon isn't saying that it could take away every benefit. So, the contract is not illusory, and we're not even close to that line. The question you asked was with respect to the implied covenant. Where a company has discretion with respect to a particular term, does the implied covenant then intervene and say you have to exercise that discretion in good faith? And the answer to that is no. What Bagehot says is there is no implied covenant question when all you're doing is standing on your contractual rights. So, that's the first point. The second point is, and Mr. Berger misstated what Rector says, he quoted part of Rector with respect to discretion, but the part that he didn't quote was where the court said, and this is the Supreme Court sitting on bonk, if a contract gives a party unconditional authority to determine a term, there is no duty of good faith in fair dealing. So, Amazon has unconditional authority to remove a benefit or add a benefit, let's not forget. Amazon adds benefits all the time, but it has unconditional authority to remove a benefit. There is no good faith question. Where discretion comes in, and Rector says this too, is where there's a hole in the contract, where there's a term missing, and what happened in Rector was there were two key terms, how many hours can a caregiver provide and what will the caregiver be paid, and DSHS had the discretion, its discretion later to fill in those two terms. What the court said was you have to do that in good faith. There's no gap in this contract. There is no hole in this contract. The contract says we are going to give you this amazing suite of benefits, this incredible suite of benefits worth way more than $139 a year, and all Amazon reserves in exchange for that is the right to occasionally add a benefit or remove one. There's no hole there, and Amazon has unconditional authority to exercise that. So, if I understand it correctly, your position would be that even if the reason for removing the Whole Foods delivery benefit was somehow nefarious, we've decided we can't stand the managers at these six stores, and so we're just removing this, that that wouldn't make any difference because it's within your sole discretion. Your Honor, respectfully, that's exactly right. If Amazon decided we hate Dina Griffith for some reason, we're not going to give her free Whole Foods delivery anymore. What sole discretion and unconditional authority mean is Amazon can exercise that contractual right for any reason or no reason. That's exactly what Badgett said, it's exactly what Rector said. And so there is no implied duty question here, period. There's also no contractual question here, because even if you accept the plaintiff's arguments and free Whole Foods delivery was part of the prime deal, we don't dispute that. Yes, it was one of the prime benefits, and she got the benefit. Going back to what your Honor asked earlier, you said, well, wasn't it true at the time she saw the ads? Yes, she said in early 2021, and granted, she's not very specific about what she saw. She said she gives some examples, and some refer to prime and some refer to Whole Foods. But take it face value, she saw something that said prime includes free Whole Foods delivery. She signed up, and that's exactly what she got. She used it several times over several months, and then she saw media. Now, she claims she can't remember a specific notice from Amazon, but she acknowledges in her complaint she saw media coverage of the fact that the benefit was going away. And then in January of 2022, she placed an order, she saw the delivery fee, and she made a choice. She could have chosen to pick the groceries up at the store, and they would have been free. She could have canceled her order. Instead, she decided to pay $10 to have her Amazon groceries arrive at her house. There's this mantra, and you heard it again from Mr. Berger, that she had no recourse. She was stuck after she got into the prime membership. That is false. She could have canceled her membership at any time. The very first subheading in the prime terms is membership cancellation, and it says right at the top, you can cancel any time by just going to your account settings. And she didn't. She didn't even try. She let her contract renew, and then she enjoyed her prime benefits for another full year. Now, her response to that is, well, maybe I could have canceled, but I wasn't going to get a full refund. There are several responses to that. The first is that's not necessarily true. The fact that she might not have been entitled to a refund under the prime terms doesn't mean she wouldn't have gotten one. If she had called up, an Amazon customer service agent might very well have given her a refund. They do that all the time. That's how Amazon operates. But more importantly, we will never know, because she didn't try. And on this point, the Davis v. HSBC case, Ninth Circuit case, addresses this exact point. In that case, the plaintiff said, I signed up for this credit card, and I had no idea I was going to be charged an annual fee. And the court said, give me a break. It's right there in the terms. It says you're going to be charged a fee. Had you read the contract, you would have seen that. You chose not to read the contract. That's on you. But the plaintiff said, well, I didn't try to cancel, because had I canceled, and even if I had gotten a refund, it might have hurt my credit score. And what the court said was, and I like the way they framed it, they said, no, you still have to try to mitigate. And the question is, is mitigation reasonably possible, not is it convenient or costless? So here, Ms. Griffith can't be heard to say, well, I don't know what would have happened, and because I don't know, and because I might not have gotten a full refund, I didn't even try. What that does is it undercuts the unfair claim under the CPA. What the unfair claim under the CPA says, and this is Greenberg that sets this out, is that you don't have a claim for unfair conduct if you have reason to anticipate the harm, you have the opportunity to avoid the harm, and you have a potential to mitigate the harm. And at every step, plaintiff could have avoided the harm she claims she suffered. When she saw these ads for Whole Foods, and remember, it's not that she saw a Whole Foods ad and ran to Whole Foods to shop. She was already a Whole Foods shopper, and presumably she still is. She says, I saw these ads for Whole Foods, and I ran to sign up for Prime. Well, when she did that, had she read the Prime terms, which she concedes she agreed to, she would have seen, oh, benefits aren't guaranteed. Amazon tells me that twice. She could have chosen not to sign up, so she could have avoided the harm in the first instance by, and one of the courts uses the term, aborting the sign-up process. The second opportunity was when she saw media saying, uh-oh, the Whole Foods delivery benefit's going away. She could have not placed any more Whole Foods deliveries, or she could have canceled her contract, but she didn't do that. Third opportunity was in January where she places an order and she's charged for it. She could have either chosen not to place it and gone and picked up her groceries, or she could have canceled her contract. And then in the year and a half after that, she could have canceled her contract and asked for a refund. She didn't do any of those things, and at each step, she could have avoided the alleged harm. And what that tells us is there can't be an unfair claim under Greenberg. So then all she's left with, and I'm not going to spend more time on the contract claims. I think we briefed those well. I think they're exceptionally weak. On the CPA claim, on the deceptive conduct, the first argument, and you heard it earlier this morning, is there's a long line of case law starting with Haywood v. Amazon that says, if all the company is doing is exercising an express contractual right, there cannot be a CPA claim, period, full stop. It is not unfair or deceptive to do what the contract says you can do. You don't have to go beyond that. But if you're inclined to, and you're inclined to credit this idea that she was misled by the ads, the ads don't say you're guaranteed this benefit in perpetuity. They don't say you get it for the duration of your prime membership. And so what Ms. Griffith says in response to that is, well, you have to take in the net impression that's created by Amazon. Amazon's marketing. You know what? We totally agree with that. And you know what's part of the net impression or the totality of the circumstances with Amazon's marketing? The prime terms. Again, the alleged harm here is not that she shopped at Whole Foods. It's that she signed up for prime. So if you want to look at the totality of the circumstances, the courts use different terms. You have to read all of the disclosures in conjunction. What's the net impression that's created? That has to include the prime terms and the disclosures in those terms that benefits might change. Your Honor, this is a contract case, pure and simple. Amazon exercised its contractual rights. That should be the end of the question. Thank you. All right. Thank you. And you have some time left for rebuttal. Thank you, Your Honor. I think we've just heard that Amazon reserves the right to start withdrawing, cutting, conditioning any of the benefits under prime at any time. And we've seen that. In fact, the courts have seen that they start putting ads on prime video. They suspend rapid delivery during the pandemic. They cut back the items on which they're giving free delivery. And so what is a consumer purchasing? A consumer is told they're purchasing certain things, but then they end up with a mystery bag. Every time they reach in, something different might be there. And the question is, at what point does that exercise of discretion by Amazon, this cutting and switching, become an abuse of discretion or unreasonable? Is it when they cut 50 percent of the benefits, 75 percent? That is a question for the jury and not something that should be decided on a motion to dismiss. And there doesn't seem to be any limit that Amazon has given the courts as a matter of law that would avoid the contract becoming illusory. And I respectfully disagree with counsel that all benefits would have to be eliminated for the contract to be rendered illusory. I don't think that's what the Washington cases that we've cited in the briefs say. And with respect to Badgett, you know, the fact in Badgett was that the bank didn't have any obligation to provide another refinance or another loan modification or extension. There simply was no contractual duty or obligation there. Here, there is a contractual obligation. And the contract says Amazon reserves some discretion to decide future contract terms, what service we're going to provide. And that's where the duty of good faith and fair dealing comes in. And with respect to Rector, you know, I think it's worth, it's necessary to go a step further down from Rector to Yesufian, which is the case cited in Rector for the notion that where there is unqualified or unconditional discretion to contract, there is no duty of good faith and fair dealing. Yesufian was a landlord tenant case where there's no mention of discretion in the lease. The tenant wanted to assign the lease and the contract said you can't assign the lease without the landlord's permission. And there was a line of case law saying the landlord has no duty to give permission to an assignment of a lease under Washington law where it's not provided for in the contract. And they can arbitrarily deny permission. And so that was what Rector was talking about by quoting Yesufian in terms of unqualified discretion, not where a contract says you have discretion. I do see my time is up. I would have responded on the refund claim more, but I will suffice to say that this is a case where the court should reverse the dismissal and remand to the district court for further proceedings and discovery on the Consumer Protection Act breach of contract and good faith and fair dealing claims. Thank you. All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. All rise.
judges: HAWKINS, GRABER, BENNETT